Good morning, Counsel. Good morning, Your Honors. Susan Coleman for Defendant Marcella Winn. All right. In this case, Marcella Winn is entitled to qualified immunity. The conspiracy alleged before in the District Court was that there was a conspiracy between Detective Winn, her partner Tal Terrell, and L.A. Sheriff's Department detectives, including Riggs, who were virtual strangers before any interaction between them. And the conspiracy alleged by plaintiffs in their complaint was that the two agencies, LAPD, L.A. Sheriff's Department, tried to make Santo Alvarez, a key witness in the Clene and Dubrique prosecution for the Alarcon murder, a better witness in that case by hiding impeachment evidence against him. But all the evidence that was collected by Winn and her partner Terrell about Santo Alvarez was given to the DA's office more than a year before. But, Counsel, wasn't the point that they deliberately did not collect certain evidence? They didn't ask certain questions so that they wouldn't get particular evidence. Isn't that the allegation? The fact that they passed on what they did uncover doesn't make up for the fact that they deliberately decided not to uncover certain information. That's the allegation. So how would giving over the information that they did collect with deliberate omissions, how would that cure the conspiracy allegation? Really, the original allegation was that the evidence that Santo Alvarez might have been involved in the Richard Daly homicide wasn't turned over, but the same prosecutor, Val Cole, prosecuted both the Alarcon murder case and the Daly murder case, and she had that evidence about Santo Alvarez in her possession. There's no reasonable officer or detective in Winn's position who would think that she violated the law when she turned over the impeachment evidence she had against Santo Alvarez to the district attorney's office more than a year before that other prosecution. But a reasonable police officer believed they violated the law if they deliberately suppressed questions that would make the witness a less credible witness? Which witness are we talking about, Your Honor? The witness, was it Palomar? Is it Kinney or Wilborn? No, Piazzo. Piazzo? Yeah, Piazzo. They attempted... Oh, was it Everett? Piazzo is the gang name for Santo Alvarez, and I'll point out that even though Plaintiffs Clinton and Dombricki were in the same Lawndale 13 gang, we have not used their gang monikers, and we should use the names for the... They tried to interview Santo Alvarez, and he refused. All of Detective Winn's interviews were on tape. There were some interviews, I think Plaintiffs, a police point out in their brief, that on one of the interviews of either Katherine Kinney or Ginger Wilborn, they didn't ask the same questions or the same information wasn't elicited, but... But Riggs interviewed Alvarez, right? Detective Riggs from the L.A. Sheriff's Department? Yes. Yeah, that was in a separate case, right? No, I understand that, and the allegation is that in that interview, Alvarez said a number of things that Riggs determined to be false. Oh, that could be, but that's the L.A. Sheriff's Department investigation. Well, okay, yes, but the allegation is also that Riggs and your client were working together in such a way that, you know, Plaintiffs allege, we can infer that your client was aware of Alvarez's false statements to Riggs, and if that's true, then the failure to disclose that looks like a fairly straightforward, you know, they say Brady, but it was really a video violation, right? So what's wrong with that line of reasoning? What's wrong with that is it's a huge leap that hasn't been shown by the evidence. There was extensive discovery, and Riggs, at his deposition, didn't remember speaking to Marcella Wynn. Admittedly, had some cognitive impairment at the age she was deposed, and Wynn didn't recall speaking to Riggs or his partner. She was the note-taker and listed things in the murder book. There is one notation in there about a discussion with L.A. Sheriff's Department, and like a phone note that lists the names of the three suspects, but they could have been called because the L.A. Sheriff's Department had the jurisdiction over the area where the Lawndale 13 gang members operated. Well, is that enough on, I mean, this is coming up to us on a denial of summary judgment, and so the question is whether there is a genuine issue of fact as to some of these questions that all might make sense by the time we get to a jury, but how does any of that defeat, back to Judge Miller's framing, of if that had happened, wouldn't that be a clearly established violation of the plaintiff's right? If what had happened, if there was a discussion about... If there was a conspiracy to suppress evidence that this key witness was being untruthful. Well, first, there's zero evidence that they actually worked together to make that happen, and secondly, the evidence that Wynn... Set aside the zero evidence, this is on summary judgment, and assume that we disagree with you on that. And secondly, Wynn, she tried to get Santo Alvarez prosecuted for the Daly murder, and the information she collected about him, and all the different statements that people had made about his involvement in that, were turned over to the DA's office. So, our position is... Not explaining that some critical evidence had maybe not been solicited, I think is the concern, rather than produced and then not turned over. Does it do any work? You'd mentioned that they're in different agencies. Does that matter for purposes of the qualified immunity? I mean, in other words, is the Giglio right not run to any state actor who has a duty to turn over or be truthful, not fabricate evidence? Well, the fact that they're in different agencies makes it less likely that a conspiracy occurred when there's just an inference of that based on different things they're trying to put together. But the fact is that everything that Marcela Wynn collected on Santo Alvarez was turned over to the DA's office. So, is your position that if a hypothetical law enforcement officer who has a Giglio duty to produce exculpatory evidence simply is willingly blind to exculpatory evidence in that investigation, no liability, willingly blind so as to secure a wrongful conviction, that that makes a difference? You're putting a lot on the fact that they turned over everything, but that's not the theory. The theory is that they acted intentionally not to uncover evidence that then would trigger that duty. So, does that make a difference? A lot of that theory came out in their answering brief and not below. The theory below was that they conspired to make Santo Alvarez a better witness and not have impeachment material against him in the form of the evidence they had that he was involved in the daily murder. Right, but if that impeachment evidence, if an investigator with Giglio duties to turn over exculpatory evidence, which could include impeachment evidence, makes an effort not to turn up impeachment evidence that they otherwise know is there. I mean, I think that's something, something of the theory. I'm just trying to figure out why you keep saying that they turned it over, but I don't think anything turns on the fact that whether they turned over what they had. The conspiracy is to ensure that they don't have that impeachment evidence. Well, in the record below, we also have that there were subsequent investigations of Alvarez. There were, when the conviction was overturned, there was investigations and never was Santo Alvarez charged with the crime for either. You're not suggesting that makes a legal difference in terms of the clearly established right, that this, what I've called willful blindness, but I assume your friends will come up with a better term for to this impeachment evidence, that you're not saying that a plaintiff doesn't have a clearly established right not to have law enforcement do that to them just because they've turned over everything. Well, I'm saying, number one, they changed their theories on appeal to add in this evidence about the collusion with the L.A. Sheriff's Department, which wasn't part of their complaint. Okay, but on the legal question, not the presentation question. And secondly, there was no additional evidence that would have come out against Alvarez. I mean, the evidence that they had gathered was all hearsay evidence that Alvarez was perhaps involved in the Daley murder. They presented him for prosecution. They tried to get him charged in that case, and that evidence was turned over. And for qualified immunity, they need to show a specific case on point that an officer or detective in Marcella Wynn's position. Why isn't it Carrillo, that case? In Carrillo, I think that's a generalized. Oh, that case, handwritten interview notes of an officer who conducted a coercive ID procedure were not disclosed. Wynn's tape recorded interviews, her notes were all turned over. But there's a difference between turning over something to the D.A. and disclosing impeachment evidence to the defense. You acknowledge there's a difference? To the defense. So if you don't turn over the information to the prosecutor, the defense never gets it. Right, but when a detective turns over evidence to the district attorney, they've met their obligation to produce Brady, Giglio, all of that evidence. The D.A. had an obligation to turn that over, and it was the same district attorney who prosecuted both cases. Counsel, did I understand you to say that your client and investigator Riggs never talked to each other? They didn't recall at their depositions having ever talked. Okay, but didn't the Daily Chrono document that they talked with each other? It's not, yeah, there is something in the Chrono and Detective Wynn's testimony in her deposition was that she believed it was to say they had found Richard Daly's body, that it was found in LAPD territory. They talk, the Chronos says specifically that Wynn talked with investigator Riggs. The Chronos says that, correct? Right, and it was about Richard Daly's body to her recollection. It doesn't matter what it was about, they talked. The Chronos says that they talked, that the subject of the conversation isn't as important as the fact that they did talk when they said they had not talked. Right. Okay. I mean, she was a young black detective, and here she's making contact. Does it matter who her race was? In the context of that time period, it does kind of, because the premise that an older white gentleman in the South Bay in an entirely different jurisdiction would have conspired with her to suppress evidence is a stretch. That's kind of racist. Really? The women and people of different races have had problems in the police agencies going up through the ranks over the years. It's gotten better. Do we have a jurisdiction to consider that argument? I mean, not that specific argument, but the broader argument that there's inadequate evidence of a conspiracy. Doesn't Johnson v. Jones say that we can't consider questions of evidentiary sufficiency on interlocutory appeal? Well, plaintiffs put forth all this evidence asking, you know, all these different things in the investigation, particularly the Sheriff's Department investigation, which the LAPD wasn't really involved in. But they want the inference to be made that there was more communication than is documented, more communication than anyone recalled, in order to find Santo Alvarez, you know, a better witness for the prosecution. And I'm just saying that inference is a stretch. Why should we make the inference in their favor versus, you know, not making that inference? For qualified immunity purposes, we are supposed to consider all the evidence in the light most favorable to the plaintiff. Well, but also they're supposed to provide a case on point for qualified immunity as to why... Right, but that doesn't have anything to do with the facts. We construe the facts in the light most favorable to the plaintiff in the qualified immunity context. So whatever inferences there are, they would go in favor of the plaintiff, not in favor of your client. But there's no case on point saying that Detective Wynn is not entitled to qualified immunity when she turned over everything to the DA. We understand your argument. Thank you, Counsel. Thank you. Good morning, Your Honors. May it please the Court. Deirdre O'Connor on behalf of John Klenny and Eduardo Dombricki. Your Honors, the Court is correct. The argument that Wynn is advancing is not the argument that plaintiffs are making. Plaintiffs agree that Detective Wynn would have no obligation, no further obligation to do anything once she disclosed the items to the district attorney if the district attorney then chooses not to disclose it. That's not our case. Our case is about all the other things she didn't disclose, which includes the omissions, but additional things. And I'll go through the list for that. So just to be clear, plaintiff's claim is about what Wynn did not disclose. We also have deliberate fabrication in Melissa's prosecution, which was not addressed in the opinion below. But there is, you know, eight volumes of evidence to support those allegations as well. The district court, this theory was addressed below. It is not accurate to say, and Counsel may be misremembering the record, but the record is clear. I think if you look at 7 ER 1443, that should be our opposition to the summary judgment motion. We call them out on this mischaracterization of our case. We say that has never been our case. Our case is about the items that weren't disclosed. So this is not a new argument framed for the first time on appeal. That has always been our case. We are talking about the evidence that was not disclosed. And the district court found that. I'm not sure what you're trying to do. I apologize. The district court found that, listening to that argument and listening to our arguments, that this other evidence that there was a reasonable jury could find based on the totality or circumstances that Riggs and Wynn acted in concert to suppress other evidence that would have undermined Pallaso's credibility as a key witness in the Alicon murder. The evidence that's so in framing the issue and mischaracterizing the issue and framing it that way, she's narrowing the case to an irrelevant topic. It's not that's not the issue here. And because they chose to try and present that as the issue, this court is without jurisdiction to handle the case because there. That would be a disputed issue of fact. And we wouldn't have jurisdiction. If there are disputed issues of fact, then qualified immunity, the interlocutory availability isn't there. Right. And in here, in framing the issue that way, they're not accepting any of our facts below. Well, isn't the, and we do, I think you argue that we don't, but we would have jurisdiction to determine whether the facts in the light most favorable to you do or don't establish a violation of a clearly established right. And does it make a difference as the Wins Council has been arguing that the, that here it's not quite that they had evidence, but that they kind of danced around that evidence, that impeachment, that it was the questions not asked, it was the leads not pursued. I mean, I get that you're saying that there's a little more to that, but if we understand in the light most favorable to the record to point mostly to this, you know, willful blindness or failure to further investigate or knowledge that, or hunches that it might be impeachable but they weren't followed up on, is that different from having exculpatory evidence and not turning it over for the qualified immunity? I'm not, assume those are the facts that we take from the record on summary judgment. Does that make a difference? Okay, I think that it does not make a difference in the context of this case because it is more than that, Your Honor. The things that, and I would frame that issue about instead of being just willful ignorance is that she is, she has information, she's deliberately avoiding exculpatory evidence. This is similar to the bad faith failure to collect and preserve evidence that would be potentially exculpatory. So that's the Miller v. Vasquez line of cases, and the district court analyzes the case in that way. But the, so that's the failure to speak to Payaso, the failure to re-interview the witnesses that do implicate Payaso. I mean, Alvarez, Mr. Alvarez. Well, he's referred to as Payaso throughout the record and in the district court's case as well because the record is infused with that. But if the court prefers me to call him Mr. Alvarez, I'm happy to do that. But throughout the briefing, it's that way. So the- Counsel, before you move on, opposing counsel said that there is no case that exists at the level of specificity that would put a reasonable police officer on notice that she had violated the Constitution in the context of the facts of this case. What's your response to that? And we briefed that in our- So what are you telling us is the closest case on the facts to the facts of this case that would constitute clearly established law for purposes of the qualified immunity analysis? Mellon v. Wynn, which is about this case. And in that case, the court just reaffirmed-it wasn't finding for the first time- but reaffirmed that there's a long history since 1978, I believe, where officers are not-are prohibited from withholding exculpatory and impeachment evidence of a material witness related to the prosecution. But that's withholding. So I guess the-I mean, it seems like part of your case- and this goes back to Judge Johnstone's question- part of your case is about information that they had that they didn't turn over. Yes. But insofar as your case turns on information that they didn't get because they were trying not to get it, it seems like- I mean, one view of that argument is that you have sort of a- it's not clear that there's really a due process claim. It's certainly not a due process fabrication claim. The duty of the police to go out and find information is a little bit vague. And so you're sort of bootstrapping that into saying, well, now it's actually a Brady claim because you didn't tell me that you weren't going out and finding information. And so it seems like kind of an end run around the lack of very clearly established law on a duty to investigate. So what's your answer to that? Okay. We're not alleging a duty to investigate. Well, but you kind of are, right? I mean, because the-at least in part, the Brady claim is you didn't tell us that you were deficiently investigating. Okay. Well, it might help if I could just back up and talk about the things that weren't disclosed because they're tied to the decision. So essentially what we're saying, this isn't a failure to investigate like a negligent, I didn't think of it or I was too lazy. This is an intentional strategic decision to direct investigation in certain ways to achieve the purpose of the conspiracy. The objective of the conspiracy was just to make sure they can clean up PAYASO as much as possible. So the things that they didn't do here didn't disclose, that Wynne didn't disclose, and my colleague is disputing the facts when she says there's no evidence of the conspiracy. The court below has found that there is ample evidence to bring that to the jury, and there's ample evidence that Wynne and Riggs spoke. Can I take you back to the Mellon case, which as you say, I mean, it's rare that we have a citation to clearly establish evidence that's referring to the same set of investigations. But there I believe we identified again that it was a withholding, a failure to turn over impeachment evidence. So there the impeachment evidence was the officer's assurance as the witness that he would be treated favorably by the judge if he testified successfully in the criminal trial, evidence that could have been used to undermine the credibility. So maybe you're framing it in that way, that the failure to pursue the evidence and to get down in the materials that were turned over, that impeachment evidence. But the claim isn't, in your case, that there was evidence in the investigative file that reflected that impeachment that wasn't turned over. You're just saying that evidence was never created. So there was nothing to turn over. That's not what we're saying. Okay, so how do you frame it? If Mellon's your best case, how do you frame it in terms of what is the impeachment evidence that should have been turned over? That they conspired. That Riggs approached Wynne, asked her, and the two of them agreed that Piazzo presented a problem for their cases and Wynne needed assistance to be able to go over after her primary suspect, which is Ghost. That's a step removed. The investigators' communication with each other is a step removed from Mellon in which you're dealing with the officers' actual communication with the witness. But Brady isn't limited to witness interviews, right? So anything under Kiles v. Whitley, and I believe Carrillo also talks about that as well, there's Lisker is another case where the integrity of the investigating officer, investigation is always at issue. And any material, any evidence that undermines and impugns the integrity of that investigation is Brady. And that can be used by the defendant to attack the veracity of the case. And in this particular case, it was especially important because Riggs' case would have blown up were it not for Wynne joining the conspiracy. And why? I mean, so it's fairly clear that you can't bring a due process claim. Suppose you have an officer who's just not very good at his job, right? And he was sort of Inspector Clouseau and goes around and interviews the wrong people, asks the wrong questions. That's not a due process violation, right? But it seems like on your theory, it's a Brady violation when he fails to tell the prosecutor, you know, by the way, I'm not very good at my job, so like there's probably a lot of evidence that I didn't get. That's not the, I'm sorry if we're, if we've not been clear about that. That's not our claim. Well, I understand that's not your claim, but it seems to me it is the logic of your position. So why is that not a Brady claim under your theory? Well, that's not our, that's not our claim. We're not claiming that she didn't disclose her. You're talking about the theory that you have. Yeah, it seems like your, the logic of your position suggests that should be a valid claim. No. Our claim is that there were specific things that were done and known that were not disclosed. And the conspiracy, the fact of the conspiracy was not disclosed. And that is, those are factual issues that have to go to a jury. Can it really be just that? So the exculpatory evidence was the officer's mea culpa, that they just should have come and said, you know, it turns out that we're engaged in this illegal conspiracy to frame your client. That was the impeachment evidence? That's not the only impeachment evidence, but that's important. Okay, let's talk about the other stuff, too, because it can't, I mean, you're talking about the conspiracy, and if it's just the conspiracy, that doesn't strike me. That has more to do with their culpability rather than the plaintiff's culpability, so. I'm sorry, rather than the plaintiff's culpability? You said that it's based on evidence that they were communicating with each other to do this. So, okay, to do what? I think your answer to try to frame this around within the realm of qualified immunity and clearly established law is, what was it that they did? You keep talking about this other evidence, but. Okay, I'll try to come back to that point, but I want to make sure that. Let's do it right now. No, no, I'm saying that specific point about the conspiracy, why the conspiracy. In other words, what would they have had to say? What would the letter to the prosecutor and the defendants, what would that look like? What would that statement look like beyond saying we're engaged in a conspiracy? The conspiracy is that we need to work our investigation to ensure that there's no additional evidence that comes forward to implicate piasma. Well, that comes close to then Judge Miller's concern. There's not a clearly established due process right, at least one that's been cited to us. It's just about negligence or duties to investigate. But that wouldn't be negligence. If you are intentionally choosing to do a corrupt investigation that is driven by an unlawful purpose, that's not a failure to investigate case. But the additional... Is there clearly established law on that point? Yeah, Kyle's v. Whitley. That's Brady evidence. When the police are engaged in wrongdoing, the wrongdoing, the evidence of the wrongdoing, is Brady independent of... So it's like to think of... I can't recall the facts of this case. But so they're at a crime scene. They see the murder weapon on the floor that would associate it with one suspect, and they willfully leave it there and then move on. That would be an example where, I mean, is that kind of... In other words, they know the evidence is there, but they're not going to get it. And they're not going to disclose what they think they know. And in Miller v. Vasquez, the issue there is that they appreciate the potential exculpatory nature of the evidence that they are deliberately avoiding to collect. And the other evidence here is the June Patty evidence. And that is outlined in our briefs and in the Mellon v. Wynn. It's the Laura Patty evidence. It's the Wynn's embellishment of June Patty's statements to make it more credible and to give it more potency. And the district, or the Ninth Circuit opinion, talks about all of the things that Wynn did to massage June Patty's statements, including inserting Wickett's role as a lookout, including facts. So Patty was interviewed on tape, and she said what she said. And then there was a written statement created by Wynn where additional facts were inserted into the written statement that June Patty said she never made. And those include making Wickett a lookout, saying that she was told the body was set on fire, that it happened at a location where there was a chain link fence and a trash can, and the timing of the dump of the body. Because those were things that June Patty didn't independently provide, but Wynn injected into it to make June Patty seem more credible. The other Brady issue relates to Wynn changing or coaching, and coaching a witness is evidence of coaching a witness is a Brady, non-disclosure of evidence of coaching a witness is a Brady violation. And that, I believe, Correa. Could you wrap up, please? And then I would say that Wynn is also responsible under conspiracy law for all of the violations that Riggs did not, all of the evidence he did not disclose, because once she entered the conspiracy, she is liable for his non-disclosures. And he didn't disclose things relating to Piazza's credibility, lies that he uncovered, new theory of motive, where it was uncovered that the motive that was ascribed to John Klenny was not accurate, he was not friends with Medrano, evidence of alternate suspects and the true motive of the crime. All right, Counsel, you've exceeded your time. Thank you. Counsel, give me a minute, okay? Let's have one minute for rebuttal. Thank you, Honor. You're welcome. There is no constitutional legal requirement to investigate a homicide. These detectives did investigate, but they didn't, there's no liability under constitutional law for if, as plaintiff claims, there was a shoddy investigation. Her claim that there was an intentional omissions isn't tied to anything in this case. She talks about June Patti in the Mellon case. That is not in the Alarcon homicide case that's at issue here. That does not pertain to her clients. And in that case, on appeal, when assumed for purposes of appeal that she had received a statement from June Patti about her sister being a liar, that was not conceded. It was assumed for purposes of appeal. But at any rate, that's a different investigation. All of the interviews in this case were tape-recorded and turned over. So that evidence was provided, and no reasonable detective would be on notice that when she turns over evidence of Alvarez's involvement in the daily murder, all the stuff that she collected, the tape-recorded interviews, that she would be violating the law. Thank you. Thank you, counsel. We understand your argument. The case, as argued, is submitted for decision by the court.
judges: RAWLINSON, MILLER, JOHNSTONE